COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Alston and Chafin
Argued at Richmond, Virginia


PAUL F. KOLMETZ

v.        Record No. 1464-12-2

CHARLOTTE L. HITCHCOCK, F/K/A
 CHARLOTTE L. KOLMETZ

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
APRIL 30, 2013

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Gary A. Hicks, Judge

Taylor B. Stone (Bremner, Janus & Stone, on brief), for appellant.

Barbara S. Picard for appellee.


Paul F. Kolmetz ("Kolmetz") appeals the order of the circuit court ordering him to

reimburse Charlotte L. Hitchcock ("Hitchcock") one-half of the cost of the medical and dental

insurance for the parties' son, T.K., for so long as the insurance carrier deems T.K. a dependent.

Kolmetz argues that the circuit court erred in ordering him to pay for T.K.'s insurance coverage

because (1) it was not the intent of the Henrico County Juvenile and Domestic Relations District

Court ("JDR court") to order on March 16, 2010 that Kolmetz pay for T.K.'s medical and dental

insurance for so long as the insurance carrier deems T.K. a dependent, (2) T.K. had reached the age

of majority and graduated from high school, and (3) the circuit court lacked jurisdiction to order the

payments.  For the following reasons, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.  BACKGROUND

On appeal, we review the evidence in the light most favorable to Hitchcock, as the party prevailing below, and grant her all reasonable inferences fairly deducible therefrom.  Shiembob v. Shiembob, 55 Va. App. 234, 237, 685 S.E.2d 192, 194 (2009).

The parties were divorced by a final decree entered in the Chesterfield County Circuit Court on May 8, 2000 ("final decree").  Regarding T.K.'s health care coverage, Paragraph 7 of the final decree states,

> Health care coverage shall be provided by the defendant [Kolmetz]
> for the parties' minor children pursuant to § 20-108.1 and
> § 20-108.2 if available at reasonable cost as defined in § 63.1-250
> *until such time as the child is no longer an eligible dependent.*
> Any medical (including educational testing and related expenses)
> and dental expenses which are not covered by insurance shall be
> paid equally by the parties.  The present health insurance policy is
> issued by United Health Care and the policy number is [XXX].

(Emphasis added).  The final decree incorporates the Property Settlement Agreement ("PSA") between the parties.  Paragraph 24 of the PSA provides,

> *As long as such insurance is reasonably available to him through
> his place of employment, Husband shall maintain [T.K.] on his
> medical and dental insurance policy* at a level comparable to the
> coverage in place as of the execution of this Agreement.  Any
> medical (including educational testing and related expenses) and
> dental expenses which are not covered by insurance shall be paid
> equally by the parties.

(Emphasis added).

In November 2009, Hitchcock discovered that Kolmetz did not have T.K. enrolled on any health insurance policy.  Hitchcock subsequently filed a motion to amend in the JDR court, asking the court to change the support order of May 8, 2000, to "Mr. Kolmetz to provide child's health care coverage or reimburse Mrs. Hitchcock for coverage.  Amend order to include coverage until child is 23 YOA to be split equally between parents."  On March 16, 2010, the JDR court ordered that, "Respondent [Kolmetz] is to reimburse petitioner ½ of hospitalization

insurance (including dental if child is covered with dental insurance) cost so long as child is deemed a dependent. All other terms of final decree remain in full force and effect." This order was not appealed, and Kolmetz paid one-half of the cost of the health and dental insurance premiums incurred by Hitchcock for T.K. from March 2010 until September 2011. T.K. turned eighteen and graduated from high school in June 2010.

In October 2011, Kolmetz filed a motion to amend the March 16, 2010 JDR court order and asked that "health care coverage no longer be required to be provided for the minor child" as the "child has reached the age of nineteen (19) and is no longer a full-time high school student." On April 3, 2012, the JDR court granted Kolmetz's motion to amend and terminated the order requiring him to pay for T.K.'s health and dental insurance. Hitchcock appealed the April 3, 2012 JDR court order to the circuit court. On July 20, 2012, the circuit court found that the "intent" of the JDR court, "upon entering its ruling of March 16, 2010, was to require the Defendant's contribution as set forth in such Order to continue for as long as such insurance was reasonably available." The circuit court denied Kolmetz's motion to amend and ordered Kolmetz to reimburse Hitchcock "one half of the cost of T.K.'s hospitalization insurance (including dental if the child is covered with dental insurance) for so long as [T.K.] is deemed a dependent, until [Kolmetz] can prove that [T.K.] is no longer a dependent, per Southern Health."

## II. ANALYSIS

### A. Duration of Kolmetz's obligation[1]

Kolmetz contends that "the circuit court erred by ordering [him] to pay one half of the cost of his son's hospitalization insurance . . . for so long as his son is deemed a dependent per Southern Health as this was not the intent of the order entered by the Henrico [JDR court] dated March 16,

---

[1] We address Kolmetz's first and third assignments of error together, as we necessarily resolve his first assignment of error in our analysis of his third assignment of error.

2010" and that T.K. "was no longer a dependent due to the fact that he had reached the age of nineteen and had graduated from high school."

Initially, we note that the March 16, 2010 JDR court order did not change the duration of Kolmetz's obligation on T.K.'s health insurance coverage. The JDR court ordered that the cost of T.K.'s coverage be split between the parents, thus reducing Kolmetz's financial obligation in the final decree by fifty percent, but the court maintained from the final decree the provision regarding duration of the obligation, so long as T.K. is a "dependent." Therefore, the circuit court should have determined the meaning of the term "dependent" and the duration of Kolmetz's obligation based on the parties' agreement in the PSA and the final decree. The task before us is to determine the duration of Kolmetz's obligation as contemplated in the PSA and the final decree in the context of the record.

On review, "we are not bound by the trial court's construction of the contract provision here in issue." Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). "We have an equal opportunity to consider the words within the four corners of the disputed provision." Id. at 188, 313 S.E.2d at 398.

Code § 20-109(C) provides:

> In suits for divorce, . . . , if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, *no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract*. If such a stipulation or contract is filed after entry of a final decree and if any party so moves, the court shall modify its decree to conform to such stipulation or contract.

(Emphasis added). Thus, pursuant to Code § 20-109(C), since the PSA between the parties was incorporated into the final decree, the terms of the final decree must be in accord with the terms of the PSA.

Further, in Virginia, "property settlement agreements are contracts subject to the same rules of . . . construction as other contracts." Smith v. Smith, 3 Va. App. 510, 513, 351 S.E.2d 593, 595 (1986). Where more than one document executed by the parties forms a contract, "the documents will be construed together to determine the intent of the parties; each document will be employed to ascertain the meaning intended to be expressed by the others." Daugherty v. Diment, 238 Va. 520, 524, 385 S.E.2d 572, 574 (1989). "In construing the documents as a whole, the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it." Id. at 525, 385 S.E.2d at 574. "'Contracts must be considered as a whole without giving emphasis to isolated terms.'" Plunkett v. Plunkett, 271 Va. 162, 167, 624 S.E.2d 39, 42 (2006) (quoting TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002)) (internal quotations and citations omitted).

One possible construction of the health care provision in the final decree is inconsistent with the health care provision of the PSA. However, "'[w]hen two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done.'" Id. at 168, 624 S.E.2d at 42 (quoting Ames v. American Nat'l Bank of Portsmouth, 163 Va. 1, 39, 176 S.E. 204, 217 (1934)). "Words used by the parties are to be given their usual, ordinary and popular meaning, unless it can be clearly shown in some legitimate way that they were used in some other sense, and the burden of showing this is always upon the party alleging it." Ames, 163 Va. at 39, 176 S.E. at 217.

The health care provisions of the final decree and PSA "may be harmonized 'without discarding any of its provisions or doing violence to any of its language.'" Plunkett, 271 Va. at 168, 624 S.E.2d at 42 (quoting Ames, 163 Va. at 39-40, 176 S.E. at 217).  The duration of Kolmetz's obligation on T.K.'s medical and dental insurance according to the PSA is "as long as such insurance is reasonably available to [Kolmetz] through his place of employment."  Thus, the clear intent of the PSA is that the duration of Kolmetz's obligation is not defined by T.K.'s age, but by the availability of an insurance policy to Kolmetz through his employer for coverage of T.K.  The final decree provides, "Health care coverage shall be provided by the defendant for the parties' minor children pursuant to § 20-108.1 and § 20-108.2 . . . until such time as the child is no longer an eligible dependent."  In construing this language in a manner that harmonizes it with the language of the PSA, it is a logical interpretation of the final decree language that Kolmetz shall provide health care coverage for T.K., a minor child at the time of entry of the final decree, and that Kolmetz shall continue to cover the child, regardless of the child's age, until the child is no longer an eligible dependent under Kolmetz's insurance policy provided by his employer.  The final decree could have ended Kolmetz's obligation when T.K. reached the age of nineteen or graduated from high school as with the child support provision.  Instead, the final decree ended his obligation on health insurance for T.K. when the child is no longer an "eligible dependent."  The term "eligible dependent" is not defined in the final decree or PSA.

"Eligible dependent" is referenced multiple times in the Code of Virginia, each time in the context of insurance.  See Code §§ 2.2-2203.4(D), 32.1-351.1(C), 38.2-508.5(F), 38.2-3407.12, 38.2-3431, 38.2-3551, 38.2-3553, 38.2-3554, 62.1-129.2.  Code § 38.2-3431, a provision relating to accident and sickness insurance and which applies to group health plans, defines "dependent" as "the spouse or child of an eligible employee, subject to the applicable terms of the policy, contract or plan covering the eligible employee."  Moreover, Code

§ 38.2-3551 defines "eligible dependent" for the article covering small employer health

insurance pooling, as

> an individual who may be covered as a dependent under a group
> health policy or policies and who is eligible, as determined by a
> small employer health group cooperative, for coverage as a
> dependent of an eligible employee under a group health policy or
> policies issued to or through such small employer health group
> cooperative.

These definitions indicate that the usual and ordinary meaning of the terms "dependent" and

"eligible dependent" when used in the context of insurance coverage, as here, do not exclude a

child who has reached the age of majority and graduated from high school, as Kolmetz urges.

The provision Kolmetz relies on to define "dependent child" is Code § 63.2-1900, where

definitions are provided for the specific chapter, "unless the context requires a different

meaning," and the definition of "dependent child" requires that one meet "the eligibility criteria

set forth in § 63.2-602 . . . ." Code § 63.2-602 provides eligibility requirements for Temporary

Assistance for Needy Families (TANF), and among other requirements, the child must be in need

of public assistance. Code § 63.2-602(A)(4). Thus, the definition of "dependent child"

advanced by Kolmetz is inapplicable to T.K.'s status and out of context in this final decree.

We hold that in the context of the record in this case, the term "dependent," as used in the

final decree and mimicked in the March 16, 2010 JDR court order, means until the insurance

carrier no longer provides coverage for the child under the parent's policy regardless of the

child's age. This reading of the final decree is in accordance with the PSA, as required by Code

§ 20-109(C).

## B. Jurisdiction

Kolmetz also argues that

> the circuit court lacked jurisdiction to order [him] to pay one half
> of the cost of his son's hospitalization insurance (including dental
> if the child is covered with dental insurance) for so long as his son

is deemed a dependent per Southern Health as his son had reached the age of majority and this was not agreed to by the parties in their Property Settlement Agreement dated February 28, 2000 nor was it ordered by the Chesterfield Circuit Court in the parties' Final Decree.

Kolmetz concedes that he failed to preserve this assignment of error in the circuit court and states that "the ends of justice require review by this Court as the [c]ircuit [c]ourt lacked jurisdiction to make its ruling."

Rule 5A:18 provides that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice."

Kolmetz did not specify what type of jurisdiction the circuit court lacked. A party may challenge the subject matter jurisdiction of a circuit court for the first time on appeal. Mohamed v. Commonwealth, 56 Va. App. 95, 101, 691 S.E.2d 513, 516 (2010). However, in this case the circuit court clearly had subject matter jurisdiction over the child support matter. In accordance with Code § 20-79(c), the final decree transferred all matters relating to the support of the child to "the appropriate Juvenile and Domestic Relations District Court having jurisdiction, for the enforcement of the decrees of this Court, or for modification or revision thereof as the circumstances may require." Code § 20-108 provides that parents may petition the court to revise the decree concerning the maintenance of the children as the circumstances of the parents and children require. Code § 16.1-296(A) provides, "From any final order or judgment of the juvenile court affecting the rights or interests of any person coming within its jurisdiction, an appeal may be taken to the circuit court within 10 days from the entry of a final judgment, order or conviction and shall be heard de novo."

In this case, Kolmetz filed a motion to amend in the JDR court asking the court to terminate his obligations to provide T.K. with health care coverage. When the JDR court granted

Kolmetz's motion to amend, Hitchcock appealed to the circuit court. Thus, pursuant to the above-referenced statutes, both the JDR court and the circuit court had subject matter jurisdiction when they issued their respective orders. Further, in petitioning the court, Kolmetz submitted himself to the personal jurisdiction of the court. Brown v. Burch, 30 Va. App. 670, 677, 519 S.E.2d 403, 406 (1999).

While a party can challenge a court's lack of subject matter jurisdiction for the first time on appeal, "a trial court's alleged lack of authority to exercise its jurisdiction must be raised before the trial court and preserved like any other legal argument." Mohamed, 56 Va. App. at 101, 691 S.E.2d at 516. Therefore, Kolmetz's failure to raise any issue of the court's authority to exercise its jurisdiction below precludes this Court's review of the issue on appeal. Id. at 102, 691 S.E.2d at 516.

We decline to apply the ends of justice exception as urged by Kolmetz. "Our Supreme Court has stated that the '[a]pplication of the ends of justice exception is appropriate when the judgment of the trial court was error and application of the exception is necessary to avoid a grave injustice or the denial of essential rights.'" Id. (quoting Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005)). "However, the exception is only invoked in narrow circumstances when '[t]he record . . . affirmatively show[s] that a miscarriage of justice has occurred, not that a miscarriage might have occurred.'" Id. (quoting Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997)).

Kolmetz does not demonstrate any grave injustice or denial of essential rights that would occur if we decline to address this issue on appeal. To the contrary, the record demonstrates that the parties agreed in the PSA that Kolmetz would cover T.K. on his insurance as long as the insurance was available to him through his employer. Virginia law recognizes and enforces agreements to provide support for a child beyond the age of majority: "Once the child reaches

- 9 -

majority, the jurisdiction of the divorce court to provide for his support and maintenance terminates *unless otherwise provided by agreement incorporated into the divorce decree*." Cutshaw v. Cutshaw, 220 Va. 638, 641, 261 S.E.2d 52, 54 (1979) (emphasis added). Consequently, no miscarriage of justice occurred in this case.

## III. CONCLUSION

For the reasons stated above, we affirm the circuit court's denial of Kolmetz's motion to amend and order requiring him to pay one-half of the cost of medical and dental insurance for T.K., for so long as the insurance carrier deems T.K. a dependent.

Affirmed.